IN RE ADOPTION OF LAY.

[Cite as In re Adoption of Lay (1986), 25 Ohio St. 3d 41.]

(No. 85-1697—Decided July 16, 1986.)

*Mason, Mason & Ellis* and *Mark J. Ellis,* for appellees.

*Marley & Marley* and *Francis M. Marley, Jr.,* for appellant.

*Per Curiam.* The sole question for review is whether the probate

court's determination that appellant failed without justifiable cause to support her daughter was against the manifest weight of the evidence. For the reasons which follow, we hold that it was not.

R.C. 3107.07 provides, in pertinent part:

"Consent to adoption is not required of any of the following:

"(A)   A parent of a minor, when it is alleged in the adoption petition and the court finds * * * that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."

This court has held that a parent's complete absence of communication with a child for the statutorily defined one-year period is sufficient to authorize an adoption without the consent of the parent. *In re Adoption of Holcomb* (1985), 18 Ohio St. 3d 361, paragraph two of the syllabus. We have also found that the reasoning of *Holcomb* equally applies to the allegation of failure to support without justifiable cause. *In re Adoption of Masa* (1986), 23 Ohio St. 3d 163, 166. Thus, a total absence of court-ordered support payments for the statutorily mandated one-year period, which we undisputedly have in the case *sub judice,* certainly satisfies the requirements set forth in R.C. 3107.07 for adoption without consent if such nonpayment occurred without justifiable cause.

It is the party petitioning for adoption who has the burden of proving, by clear and convincing evidence, that the natural parent has failed to support the child for the requisite period and also that the failure was without justifiable cause. *Masa, supra,* at 166; *Holcomb, supra,* at paragraph four of the syllabus. Although "* * * [n]o burden is to be placed upon the non-consenting parent to prove that his failure to communicate [or pay support] was justifiable," *Holcomb, supra,* at 368, this does not mean that the non-consenting parent cannot be called to testify at a hearing on the necessity of his or her consent. The testimony elicited from such parent and the other testimony and evidence adduced from each side of the issue may be reviewed by the probate court, and it is for such court, which is in the best position to observe the demeanor of the parties, to assess their credibility and to determine the accuracy of their testimony. *Id.* at 367.

The probate court must determine the question of whether justifiable cause has been proven by clear and convincing evidence in a particular case, and such a determination "* * * will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *Masa, supra,* at 166, citing *In re Adoption of McDermitt* (1980), 63 Ohio St. 2d 301, 306 [17 O.O.3d 195]. While the burden of proof before the probate court is that of clear and convincing proof, "* * * [o]nce the clear and convincing standard has been met to the satisfaction of the probate court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof."

*Holcomb, supra,* at 368, citing *Cross* v. *Ledford* (1954), 161 Ohio St. 469 [53 O.O. 361], paragraph three of the syllabus.

In *Masa, supra,* the appellant argued that "* * * being on welfare does not *of itself* establish justifiable cause for failure to support one's child." (Emphasis added.) *Id.* at 166. There, we rejected such a blanket contention because it failed to take into account the specific facts of each case. A parent's ability to pay, but failure to do so, is one factor for the probate court to consider. *McDermitt, supra.* In *Masa, supra,* where the father's monthly court-ordered child support payments totaled thirty-seven more dollars than his monthly welfare check, the fact that "there was *no* evidence before the trial court that appellee was financially capable of meeting his child support obligation," (emphasis added) *id.* at 167, was thought to be determinative of the "justifiable cause" issue. However, even there, the father's testimony indicated that he fully understood he was responsible for his monthly support obligation and for the arrearages that had built up during his period of nonpayment. *Id.* Thus, one of the factors which the probate court may consider in addition to ability but failure to pay court-ordered support is the voluntariness or intent of the parent's failure to make such payments. Cf. *In re Adoption of Hupp* (1982), 9 Ohio App. 3d 128. The probate court must balance the evidence taken as to all the relevant factors in order to determine whether there is clear and convincing evidence before it that the parent failed to support the child without justifiable cause.

The record before us demonstrates that the natural mother was able to afford to pay an attorney in the divorce action between herself and the natural father of their child; that she was able to afford to pay an attorney in the adoption action; that she was able to make a one-hundred-dollar child support payment eight days *after* the adoption petition was filed; that she never sought to have her support order eliminated; and that, when asked if she felt any need to support Timyka, she answered, "* * * She is my daughter, but like I said, why should I have to pay them to keep her." Upon a review of the record here, we find that the probate court's determination that there was clear and convincing proof before it that Nawatha Robyn Kay Lay failed to pay her court-ordered support without justifiable cause was not against the manifest weight of the evidence.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, HOLMES and WRIGHT, JJ., concur.

LOCHER, GREY and DOUGLAS, JJ., dissent.

GREY, J., of the Fourth Appellate District, sitting for C. BROWN, J.

GREY, J., dissenting. I concur with Justice Douglas' conclusion in his dissent that the trial court was wholly without jurisdiction to consider this adoption.

I do not concur in the conclusion that the rule laid down in *In re Adoption of Holcomb* (1985), 18 Ohio St. 3d 361, and repeated in *In re Adoption of Masa* (1986), 23 Ohio St. 3d 163, and *In re Adoption of Gibson* (1986), 23 Ohio St. 3d 170, places an impossible burden on prospective adoptive parents to show the natural parents' failure to support or communicate was without justifiable cause.

Here, the burden of proof upon the petitioners would not be so burdensome. In order to determine if Robyn Lay's failure to pay support for Timyka was without justification, one only needed to ask if John or Judith Lay had ever made a demand for the ordered support upon Robyn. If the answer was "yes," then such a failure could have been easily deemed unjustifiable by the trial court. There is no evidence in the record that such a demand was ever made. While it is clear from the record that Robyn Lay at least knew of her obligation of support, it is not equally as clear that she was aware that failure to provide that support for a full year could result in the termination of her parental rights with regard to Timyka Lay.

R.C. 3107.07 was enacted to serve at least two purposes. One is to protect the rights of natural parents. The other is to protect the child from the unconcerned, uncaring parent who will not support or communicate with the child, yet who will not consent to an adoption.

By using the word "justifiable" the legislature intended that in each adoption case, the courts must look to see which interest needs the protection of the court. The courts, however, are left to grapple with what is "justifiable" and what is not.

It is ironic that the statute created to protect parental rights can act as a two-edged sword and deprive the unknowing parent of those same rights. It is equally ironic that one party knowing the law can sit back waiting for the statutory one year to run, and thus be able to extinguish the rights of a parent whom he knows to be a loving and concerned parent.

It is obvious from the record that Robyn Lay, although unable to give financial support, offered her daughter Timyka her time and love. Our court system should not encourage the taking of a child from its parent under the circumstances presented to this court in this matter.

As Justice Douglas points out, in *Masa, supra,* at 169, proving a negative is often difficult, but there is a simple litmus test for establishing lack of justifiable cause, *i.e.,* demand.

In carrying out the legislature's mandate that the courts determine what is "justifiable" failure to support or communicate, I would suggest that this court adopt a policy of encouraging prospective adoptive parents to make demand on the natural parent for support or communication under threat of proceeding with an adoption. While such a demand cannot be required by this court, evidence of such a demand in the record, and

evidence of failure following such a demand, would make the clear and convincing standard in *Masa, Holcomb* and *Gibson* a workable standard.

While this proposal is only one possible standard, and I concede there may be others and better, I feel that until this Supreme Court adopts standards or guidelines to determine what is "justifiable," the courts of this state will be left without direction on this important issue.

LOCHER, J., concurs in the foregoing dissenting opinion.

DOUGLAS, J., dissenting. I respectfully dissent for two reasons. First, the unfortunate language found in *In re Adoption of Holcomb* (1985), 18 Ohio St. 3d 361, and repeated in *In re Adoption of Masa* (1986), 23 Ohio St. 3d 163, and *In re Adoption of Gibson* (1986), 23 Ohio St. 3d 170, concerning the duty of the party petitioning for adoption not only to prove that the natural parent has failed to communicate (or support) but also to prove that such failure was without justifiable cause, should not be perpetuated in this opinion. Accordingly, I dissent for the reasons stated in my dissents in *Masa, supra,* and *Gibson, supra.*

Second, and more importantly, I question the standing of the petitioners, without other legal process, to seek this adoption. The petitioners were granted *temporary* custody of Timyka in a divorce action between the petitioners' son and his wife, appellant herein. This was a proper order of the domestic relations court pursuant to R.C. 3109.04(A). Petitioners had been permitted to intervene in their son's and daughter-in-law's divorce action in violation, in my judgment, of Civ. R. 24. A complete review of the record reveals that the divorce action filed by appellant daughter-in-law was dismissed, and by entry of October 12, 1982, the court said that "* * * the matters pertaining to custody, support and visitation are transferred to the Wyandot County Juvenile Court." This certification vested exclusive jurisdiction in the juvenile court. R.C. 3109.06.

In addition to other parties who must consent in writing to an adoption, R.C. 3107.06(D) requires the consent of the juvenile court that has jurisdiction to determine custody of the minor. Furthermore, R.C. 3107.05(A)(4) requires that the petition for adoption shall include "[t]he date of placement of a minor and the name of the person placing the minor * * *." In the case before us there was no consent filed by the juvenile court nor was there ever any "placement" of the child.

Given the foregoing, it is no wonder the learned trial court, at the original hearing on the adoption said, "[a]s the Court indicated to all counselors, I have some severe reservations about jurisdiction. * * *" To be fair, it should be noted that counsel did not give the judge much help in this regard as the entire proceedings were bogged down in arguments that centered around the Uniform Child Custody Jurisdiction Act, which has no application to this case, and the alleged lack of any payment of support by appellant. Likewise, the case was argued in the court of appeals on the same issues.

The foregoing list of pertinent and applicable statutes and rule is not meant to be exclusive. There are yet others which also apply to this case. However, while the record itself raises these issues, the parties have not brought them to our attention. While it is my feeling, after reviewing the record, that the petitioners are fine people and have provided, and would provide, a good home for the child in question, such facts do not give us the liberty to ignore what this record and the statutes plainly state — that the procedures followed for adoption in this case have been horribly wrong and we, as the highest court of this state, should require that the law be followed before we permit an order to be entered permanently terminating appellant's parental rights. This is a classic case of "we can offer a better deal," and while such a situation may merit some consideration in adoption proceedings, we should not permit violation of basic fundamental rights to accomplish this purpose. I would remand this cause to the trial court with instructions to vacate and dismiss the adoption proceedings and require any further proceedings to be in accordance with law. Since this is not being done in this case, I must dissent.