OPINION
{¶ 1} Appellant, Kimberly Johnston, appeals the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, granting appellee, Ashtabula County Children Services Board's, Motion Requesting Modification of Temporary Custody to *Page 2 
Permanent Custody of Johnston's children. For the following reasons, we affirm the decision of the court below.
 {¶ 2} Johnston is the biological mother of three children, A.J. (dob 3/02/01), N.G. (dob 8/07/02), and U.J. (dob 11/07/03). Benjamin Gore is the children's biological father. In July 2006, the children resided with Johnston and Gore in an apartment on Lambrose Lane, in Ashtabula, Ohio.
 {¶ 3} On July 31, 2006, the Ashtabula County Court of Common Pleas granted the Children Services Board "ex parte temporary emergency custody" of the three children, their ages being 5, 3, and 2.
 {¶ 4} On August 1, 2006, the Children Services Board filed a Verified Complaint for Temporary Custody. The complaint alleged that approximately 2:30 a.m., on July 29, 2006, Johnston and Gore were arrested by the Ashtabula Police Department in connection with a traffic violation. Johnston told the police that her children were home alone. The police went to the apartment with Johnston and found the children asleep. The police reported that the apartment lacked food, was in an unsafe/unsanitary condition, and contained "drug paraphernalia" in plain view and accessible to the children.
 {¶ 5} Johnston and Gore tested positive for cocaine and marijuana following their arrest. They were subsequently charged with Child Endangerment.
 {¶ 6} The children were initially placed with the maternal grandparents. The grandparents were unable to keep the children.[1]
U.J., the only girl, was subsequently placed with a maternal aunt, Mandy Perkins. A.J. and N.G., the two boys, were *Page 3 
subsequently placed with a maternal step-aunt, Tanya Valezquez. In January 2007, the boys were moved to a foster home[2].
 {¶ 7} On August 2, 2006, the Children Services Board was granted temporary custody of the children.
 {¶ 8} On September 14, 2006, the juvenile court found, by "admission/stipulation," that the children were neglected.
 {¶ 9} On October 24, 2006, the court magistrate accepted the case plan developed by the Children Services Board. This plan, in part, required Johnston and Gore to: a) submit to a drug and alcohol assessment and follow all recommendations; b) submit to a psychological evaluation and follow all recommendations; c) provide medical/educational information concerning the children as requested and attend their medical appointments; d) attend parenting classes; e) submit to random drug screens; f) obtain and maintain appropriate housing; g) resolve pending criminal matters; and h) obtain operator's licenses.
 {¶ 10} Johnston and Gore were able to visit the children weekly at Johnston's mother's home.
 {¶ 11} On July 5, 2007, the Children Services Board filed a Motion Requesting Modification of Temporary Custody to Permanent Custody. Attempted service of this motion by certified mail at Johnston's mother's address on Main Street in Geneva, Ohio, was unsuccessful. *Page 4 
 {¶ 12} On July 25, 2007, a copy of the Children Services Board's motion was hand-delivered to Johnston at a dispositional review hearing.
 {¶ 13} The Children Services Board's motion contained the following notices:
 {¶ 14} "You will take notice that a motion has been filed in the Juvenile Court of Ashtabula County Children Services Board, requesting an order that [A.J, N.G., and U.J.] be committed to the Permanent Custody of ASHTABULA COUNTY CHILDREN SERVICES BOARD. You are hereby notified that if the motion for Permanent Custody is granted, you will lose forever all parental rights and privileges with respect to said children including the right to decide where the children will live, what religion they will receive, what their names shall be and whether they will be adopted. Also, all duties, including the obligation to support, provide, and care for the children will forever end."
 {¶ 15} "Notice is hereby given that a hearing is scheduled regarding this Motion for Permanent Custody on November 1, 2007 beginning at 9:30 a.m. at the Ashtabula County Juvenile Court * * *."
 {¶ 16} On November 1, 2007, a hearing was held on the Children Services Board's motion. Neither Johnston nor Gore attended the hearing. Gore's attorney stated that Gore had not contacted him for over a year. During the course of the hearing, Gore telephoned the court and orally requested a continuance, which the court denied. Johnston provided no explanation for her failure to attend the hearing.
 {¶ 17} The following persons testified on behalf of the Children Services Board at the hearing: Lori Merkel, the case worker responsible for working with Johnston and Gore; David Bowens, the chemical dependency supervisor/director at the North Coast Center who conducted Johnston's drug and alcohol assessment; Mandy Perkins, *Page 5 
Johnston's aunt who has had custody of U.J. since her removal; and Cheryl Perkins, Johnston's mother.
 {¶ 18} The following testimony relative to the objectives outlined in the case plan were provided at the hearing. In September 2006, Johnston submitted to a psychological and substance abuse assessment at the North Coast Center. At this time, Bowens was not able to make a diagnosis regarding Johnston's chemical dependency due to a lack of information. Johnston reported to Bowens that she used alcohol twice a year, marijuana once a year, and cocaine two or three times in her life. Bowens recommended that she refrain from all chemical use.
 {¶ 19} Following the initial assessment, Johnston tested positive for drug use. In January 2007, she was ordered by the court to undergo a second drug and alcohol assessment. Johnston never submitted to a second assessment and continued to test positive for drug use. In July 2007, Johnston admitted to using marijuana and cocaine.
 {¶ 20} Johnston told Merkel, her case worker, that she resided with her mother in Geneva. Johnston's mother, to the contrary, testified that Johnston lived with Gore at the Lambrose Lane apartment. Merkel testified that Johnston was usually present at the apartment during her visits. Johnston was not cooperative during Merkel's visits and only allowed Merkel to enter the apartment on two occasions. On Merkel's final visit, in July 2007, she was not allowed to enter but noticed that the general condition of the apartment was filthy.
 {¶ 21} There was testimony from Merkel, Johnston's mother, and Mandy Perkins that Johnston and Gore were in the process of being evicted from the apartment at the time of the hearing. *Page 6 
 {¶ 22} Regarding visitation, Johnston's mother testified that, initially, Johnston exercised visitation regularly but, over time, visitation decreased and Johnston had not visited or contacted her children for approximately two months prior to the hearing. Johnston's mother also testified that Johnston consistently cut visitation short and would favor U.J. over the boys, A.J. and N.G.
 {¶ 23} Johnston never provided medical information regarding the children, never attended their medical appointments, and never attended parenting classes.
 {¶ 24} On November 23, 2007, the Magistrate's Decision was filed, recommending that the Children Services Board be granted permanent custody of the children. The magistrate found that the children could not be placed with either parent within a reasonable time or should not be placed with their parents based on their failure to remedy the problems that initially caused the children to be removed, despite the reasonable case planning and diligent efforts of the Children Services Board, and their lack of commitment to the children as demonstrated by their failure to visit or obtain suitable housing.
 {¶ 25} The magistrate also found that the termination of Johnston's parental rights was in the best interests of the children. The magistrate noted there was little evidence of bonding between the children and Johnston. U.J. is well-bonded with Mandy Perkins' family and Perkins is willing to formally adopt U.J. A.J. and N.G. are bonded with each other and are having their needs met at their current placement in foster care. As expressed through the report of the guardian ad litem, none of the children wished to be returned to their parents' home. The magistrate found the children are in need of a legally secure permanent placement and that this cannot be *Page 7 
achieved without a grant of permanent custody to the Children Services Board due to the parents' lack of progress on the case plan and lack of interest in caring for the children. Finally, the magistrate noted the guardian ad litem recommended that the Children Services Board's motion be granted.
 {¶ 26} Both Johnston and Gore filed objections to the Magistrate's Decision.
 {¶ 27} On February 6, 2008, the juvenile court overruled Johnston's and Gore's objections.
 {¶ 28} On February 11, 2008, the juvenile court adopted the Magistrate's Decision as the judgment of the court.
 {¶ 29} Johnston timely appeals and raises the following assignments of error.
 {¶ 30} "[1.] When a public service agency filed a motion for permanent custody under O.R.C. 2151.414, the trial court erred by granting the motion when the children have been in custody less than one year and are not abandoned or orphaned and the parents made progress on their case."
 {¶ 31} "[2.] When the trial court proceeded on a motion to modify temporary custody to permanent custody, the trial court erred when it failed to serve mother a hearing notice and schedule a pre-trial hearing."
 {¶ 32} "[3.] When the trial court is required to make a determination that a public service agency made reasonable efforts to reunify children with their parents and family, a trial court erred by ruling in favor of permanent custody when the record shows a failure to provide diligent case planning."
 {¶ 33} It has often been remarked that "parents who are suitable persons have a `paramount' right to the custody of their minor children" and that the "[p]ermanent *Page 8 
termination of parental rights has been described as `the family law equivalent of the death penalty in a criminal case.'" In re D.A.,113 Ohio St.3d 88, 2007-Ohio-1105, at ¶ 10 (citations omitted). "[S]uch an extreme disposition is nevertheless expressly sanctioned * * * when it is necessary for the `welfare' of the child." In re Cunningham (1979),59 Ohio St.2d 100, 105; In re Williams, 11th Dist. Nos. 2003-G-2498 and 2003-G-2499, 2003-Ohio-3550, at ¶ 35 (citation omitted). "[T]hefundamental or primary inquiry at the dispositional phase of these juvenile proceedings is not whether the parents of a previously adjudicated `dependent' child are either fit or unfit," rather, it is "the best interests and welfare of that child [that] are of paramount importance." Id. at 106 (emphasis sic). "Parental interests must be subordinated to the child's interest in determining an appropriate disposition of any petition to terminate parental rights." Id.
 {¶ 34} The procedures and standards for the permanent termination of a parent's rights to the care and custody of their children is contained in R.C. 2151.413 and R.C. 2151.414.
 {¶ 35} "A public children services agency * * * that, pursuant to an order of disposition [of neglect] * * *, is granted temporary custody of a child who is not abandoned or orphaned may file a motion in the court that made the disposition of the child requesting permanent custody of the child." R.C. 2151.413(A). "Upon the filing of a motion * * * for permanent custody of a child, the court shall schedule a hearing and give notice of the filing of the motion and of the hearing * * * to all parties to the action and to the child's guardian ad litem." R.C. 2151.414(A)(1). "[T]he court may grant permanent custody of a child to a movant if the court determines at the hearing * * *, by clear and convincing evidence, that it is in the best interest of the child to grant *Page 9 
permanent custody of the child to the agency that filed the motion for permanent custody and * * * the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C. 2151.414(B)(1)(a).
 {¶ 36} "Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, at paragraph three of the syllabus; In re Holcomb (1985), 18 Ohio St.3d 361, 368
(citation omitted); State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 20 (citation omitted).
 {¶ 37} When reviewing the juvenile court's findings, this court applies the civil manifest-weight-of-the-evidence standard. In reLay (1986), 25 Ohio St.3d 41, 42 (citation omitted). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Wilson,2007-Ohio-2202, at ¶ 24, quoting C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, at syllabus. "A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Id., quoting Seasons CoalCo., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 81.
 {¶ 38} In her first assignment of error, Johnston argues the juvenile court's granting of permanent custody was "premature." The evidence did not support the *Page 10 
court's finding that the children could not be placed with the parents within a reasonable time in light of the fact that there was some compliance with the case plan.
 {¶ 39} "In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence." R.C. 2151.414(E). "If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent: (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * * (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child." R.C. 2151.414.(E)(1) and (4).
 {¶ 40} "[T]he existence of a single factor will support a finding that a child cannot be placed with either parent within a reasonable time."In re J.C., 4th Dist. No. 07CA834, 2007-Ohio-3783, at ¶ 23; In reWilliam S., 75 Ohio St.3d 95, 99, 1996-Ohio-182 ("R.C. 2151.414(E) requires the trial court to find that the child cannot be placed with either of his or her parents within a reasonable time * * * once the court has determined * * * that one or more of the * * * factors exist"); In reJason S., 6th Dist. No. L-05-1264, *Page 11 2006-Ohio-726, at ¶ 30 ("because one of the enumerated conditions existed, it was unnecessary for the juvenile court to address any of the other 15 conditions listed in R.C. 2151.414(E)").
 {¶ 41} In the present case, the juvenile court found two of the R.C. 2151.414(E) factors to exist, i.e. Johnston failed to substantially remedy the conditions causing the initial removal of the children and she demonstrated a lack of commitment toward the children. Both findings are supported by competent and credible evidence. Johnston's lack of commitment toward the children was demonstrated by her failure to visit and communicate regularly with the children when able to do so and by her failure to obtain and maintain adequate housing for them. Although Johnston complied with some aspects of the case plan, those aspects did not remedy the condition causing the children's removal. For example, Johnston complied with the case plan by submitting to random drug screens, however, those screenings demonstrated she continued to use illegal drugs, contrary to the recommendation of her substance abuse assessor. In re Pihlblad, 5th Dist. Nos. 2008CA0019 and 2008CA0020,2008-Ohio-2776, at ¶ 32 ("where, despite marginal compliance with some aspects of the case plan, the exact problems which led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time") (citation omitted).
 {¶ 42} The first assignment of error is without merit.
 {¶ 43} In her second assignment of error, Johnston asserts the juvenile court failed to provide adequate notice of the permanent custody hearing. *Page 12 
 {¶ 44} As noted above, upon the filing of a motion for permanent custody, the juvenile court is required to "schedule a hearing and give notice of the filing of the motion and of the hearing," which notice "shall contain a full explanation that the granting of permanent custody permanently divests the parents of their parental rights * * *." R.C. 2151.414(A)(1).
 {¶ 45} Johnston concedes that she was personally served with the Children Services Board's motion at the July 25, 2008 dispositional review hearing. Johnston argues, however, that "the statutory law says that the hearing date shall be separately issued by the Court after the filing of the motion" and that a "separate hearing notice would have allowed a pre-trial opportunity to file for discovery."
 {¶ 46} The Children Services Board's motion contained the statutorily required notice that a grant of permanent custody would permanently divest Johnston of her parental rights and that a hearing on the motion was scheduled for November 1, 2007. Since Johnston received actual notice of the hearing date, we fail to understand how a separate hearing notice containing the same information would have further enabled her to conduct pre-trial discovery. Moreover, the Magistrate's Decision issued after the July 25, 2007 dispositional review hearing stated that Johnston was "personally served" with the Board's motion and that "an evidentiary hearing is scheduled for November 1, 2007." The Magistrate's Decision was subsequently adopted by the juvenile court and Johnston was served with the court's Judgment Entry by certified mail. Thus, the record before us demonstrates that notice of the hearing on the Board's motion was separately issued by the court. *Page 13 
 {¶ 47} Johnston also argues that she was denied "the right to an arraignment and a pre-trial" on the Board's motion. Johnston fails to cite to any rule of law, statute, or case law standing for the proposition that a parent is entitled to a pre-trial hearing upon a public children services agency's filing of a motion for permanent custody. Nor did Johnston motion the court for such a hearing or assert any special circumstances why such a hearing would have been necessary.
 {¶ 48} Johnston's reliance upon this court's decision in In reRoque, 11th Dist. No. 2005-T-0138, 2006-Ohio-7007, is misplaced."Roque was an ineffective assistance of counsel case, where appellant's counsel fell woefully short of the standard for reasonably effective representation and where, as a result, appellant was prejudiced by such ineffective representation." In re Lambert, 11th Dist. No. 2007-G-2751,2007-Ohio-2857, at ¶ 86. Here, Johnston raises no allegation that counsel was ineffective and no credible allegation of prejudice as the result of not having a pre-trial hearing.
 {¶ 49} The Roque decision does state that a juvenile court has a duty, pursuant to Juv. R. 29(D), "to read [the parent's] rights to her on the record, and to obtain a knowing waiver of those rights." 2006-Ohio-7007, at ¶ 19 (citations omitted). The reference to, and reliance upon, Juv. R. 29 in the context of a permanent custody hearing is inapposite. By its terms, Juv. R. 29 only applies to adjudicatory hearings, such as a hearing on a complaint alleging that a child is an abused, neglected, or dependent child. R.C. 2151.28(A)(2). Since a hearing on a motion for permanent custody is a dispositional hearing and governed by Juv. R. 34, Juv. R. 29 has no application to these proceedings. In re Williams, 10th Dist. No. 03AP-1007, 2004-Ohio-678, at ¶ 8, and the cases cited therein. *Page 14 
 {¶ 50} The second assignment of error is without merit.
 {¶ 51} Under the third and final assignment of error, Johnston argues the juvenile court's finding that the Children Services Board provided "reasonable case planning and diligent efforts" to assist her in remedying the causes of removal is not supported by the record.
 {¶ 52} "At various stages of the child-custody proceeding, the [children services] agency may be required * * * to prove that it has made reasonable efforts toward family reunification. To the extent that the trial court relies on R.C. 2151.414(E)(1) at a permanency hearing, the court must examine the `reasonable case planning and diligent efforts by the agency to assist the parents' when considering whether the child cannot or should not be placed with the parent within a reasonable time. However, the procedures in R.C. 2151.414 do not mandate that the court make a determination whether reasonable efforts have been made in every R.C. 2151.413 motion for permanent custody." In re C.F.,113 Ohio St.3d 73, 2007-Ohio-1104, at ¶ 42.
 {¶ 53} Johnston argues the Children Services Board is at fault for the delay in her obtaining services for chemical dependency. Johnston relies upon Bowens' testimony that, at the time of her assessment by North Coast, the Board had not provided him with any information that suggested a problem with chemical dependency. Johnston asserts that, if the Board had provided Bowens with more information, she could have been diagnosed with chemical dependency, and thus begin treatment, in September 2006 thereby making the second assessment ordered in January 2007 unnecessary.
 {¶ 54} Johnston's argument is unconvincing. Bowens testified that he was aware of the circumstances of the children's removal and that Johnston had tested positive for *Page 15 
cocaine and marijuana in August 2006. Johnston does not specify what further information the Board might have acquired prior to her assessment in September 2006. Also relevant is the fact that Johnston grossly misrepresented her actual drug usage during the initial assessment and that she never submitted to a second assessment, which was ordered six months prior to the Board's moving for permanent custody. We find no lack of diligence on the part of the Board with respect to Johnston's failure to obtain treatment for her, as yet, undiagnosed chemical dependency.
 {¶ 55} Johnston also argues the Children Services Board demonstrated a lack of diligence in pursuing the possibility of placing the children with their paternal grandparents, who live in Indiana. The guardian ad litem stated in her report that she had been contacted by the paternal grandmother in the summer of 2007 about having the children live with her. Merkel testified at trial that an interstate home study had commenced but was not yet completed. Johnston's mother testified that Johnston desired Gore's parents to take custody of the children, in the expectation that Gore's parents would return them to her custody. Johnston maintains the juvenile court should have waited until the investigation of the paternal grandparents had been completed before granting the Board permanent custody.
 {¶ 56} We disagree. The Ohio Supreme Court has stated that a juvenile court is under no duty to "find by clear and convincing evidence that no suitable relative was available for placement" before terminating parental rights. In re Schaefer, 111 Ohio St.3d 498, 2006-Ohio-5513, at ¶ 63 (overruling this court's decision, holding that the termination of a parent's rights must not only be "a necessary option, but also the only *Page 16 
option").[3] Thus, the Children Services Board's "duty to use reasonable efforts applies only to efforts to avoid removal of a child from her home or to reunify the child with her family," not "to make reasonable efforts to place a child with relatives." In re Warren, 5th Dist. No. 2007CA00054, 2007-Ohio-5703, at ¶ 23.
 {¶ 57} Here, the Children Services Board was actively investigating the possible placement of the children with the paternal grandparents at the time of the dispositional hearing. The evidence indicates the Board was not contacted by the paternal grandparents until the summer of 2007. The termination of Johnston's parental rights will have no effect on the suitability of the paternal grandparents as potential placement for the children. Johnston has presented no compelling reason why the juvenile court should not have ruled on the Board's motion until after the investigation of the paternal grandparents.
 {¶ 58} Finally, we note that the juvenile court justified its finding that the children could not be placed with either parent within a reasonable time on R.C. 2151.414(E)(4), i.e. a "lack of commitment toward the child" as well as R.C. 2151.414(E)(1). Subsection (E)(4) does not require a demonstration of "diligent efforts" to assist the parents as does subsection (E)(1). Accordingly, even if we found a lack of "diligent efforts" on the part of the Children Services Board with respect to assisting Johnston's compliance with the case plan (which finding we do not make), the juvenile court's judgment would still be affirmed on the basis of R.C. 2151.414(E)(4). *Page 17 
 {¶ 59} The third assignment of error is without merit.
 {¶ 60} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, terminating Johnston's parental rights and granting permanent custody of her children to the Children Services Board, is affirmed. Costs to be taxed against appellant.
TIMOTHY P. CANNON, J., concurs, COLLEEN MARY OTOOLE, J., dissents.
[1] The grandparents are raising another one of Johnston's children.
[2] Valezquez requested that N.G. be removed from her home because of his behavior. The Children Services Board felt that it was in the boys' best interest not to be separated, since they were a "support system" for each other, and had doubts about the suitability of Valezquez' home as a permanent placement for the boys.
[3] The Schaefer court further explained the statute's requirements as follows: "The statute requires a weighing of all the relevant factors, and the trial court did that in this case. R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." 2006-Ohio-5513, at ¶ 63. *Page 1