OPINION
{¶ 1} Appellant, S.M., appeals the Judgment Entry of the Geauga County Court of Common Pleas, Juvenile Division, in which the court terminated the parental rights and responsibilities of S.M.'s parents and granted permanent custody of her to appellee, *Page 2 
Geauga County Department of Job and Family Services (GCJFS). For the following reasons, we affirm the decision of the court below.
 {¶ 2} S.M.'s mother, Julie Milliken, married Fred Shoemaker, S.M.'s father, in 1997. S.M.'s brother, Conrad Shoemaker, was born while the couple was married. S.M. was born in 2000, after Milliken and Shoemaker had divorced. From her birth on June 26, 2000, through August 12, 2004, S.M. was in the custody of Milliken, while Conrad remained in the custody of Shoemaker.
 {¶ 3} After Milliken was arrested for child endangerment and disorderly conduct, S.M. was placed in the temporary custody of Cuyahoga County Children and Family Services from August 13, 2004, through August 22, 2006, after which, she was returned to the permanent custody of Milliken.
 {¶ 4} In August 2007, Milliken was sentenced to a brief period of incarceration ending on September 22, 2007. Concerned that her live-in paramour, Daniel Ivans, would not be able to care for her daughter, Milliken voluntarily placed S.M. in the temporary custody of GCJFS on August 17, 2007. GCJFS prepared a case plan that included a drug and mental health assessment, counseling, and substance abuse tests for Milliken. While incarcerated, Milliken completed an intensive outpatient program. She also enrolled at the Dual Diagnosis Program at Ravenwood Mental Health Center. The GCJFS case plan was later amended to add Ivans and Shoemaker; they were to complete drug/alcohol and mental health assessments as well.
 {¶ 5} On September 11, 2007, the Geauga Country Court of Common Pleas issued a judgment entry granting Maria Ellis, the sister of Ivans, and her husband, Del, temporary custody of S.M. After a 180 day review hearing on March, 3, 2008, the court found that the Ellises were unable/unwilling to make a long term commitment in raising *Page 3 
S.M. if she were not able to be reunited with either of her parents. The court also found that there was a lack of progress and lack of commitment by both parents. Thus, the court ordered that GCJFS was to find other permanent placement options for S.M. She was subsequently moved from the Ellis home to a foster home.
 {¶ 6} In May 2008, GCJFS made a Motion for Permanent Custody of S.M. GCJFS stated the grounds were that S.M., although not abandoned or orphaned, could not be placed with either parent within a reasonable time or should not be placed with either parent, and termination of parent rights was in the best interests of the child.
 {¶ 7} At the permanent custody hearing, after testimony from social workers, therapists (of both S.M. and Milliken), the court appointed special advocate for S.M., and Milliken, the court granted GCJFS's Motion for Permanent Custody. The court held that Shoemaker had abandoned S.M. as defined by R.C. 2151.011(C).
 {¶ 8} The court further found that S.M. had not been abandoned by Milliken. In addition, although S.M. had not been in the custody of one or more public children service agencies for twelve or more months of a consecutive twenty-two month period immediately preceding the filing of the motion for permanent custody, S.M. could not be returned home within a reasonable time. The court reasoned that Milliken failed "continuously and repeatedly to substantially remedy the conditions causing [S.M.] to be placed outside of the * * * home." The court found it compelling that, "[d]uring the course of the permanent custody hearing [Milliken] acknowledged that she continued to drink while the case was pending", she did not cooperate with breath testing, she has mental health issues that "prevent her from being able to consistently parent her child", there are relationship issues between Milliken and Ivans that have not been adequately *Page 4 
addressed in counseling, and Milliken was not consistent in exercising visitation with S.M.
 {¶ 9} S.M. timely appeals[1] and raises the following assignment of error: "Appellant was not in custody of GCJFS for 12 or more months of the last 22 consecutive months under R.C. 2151.414(B)(1)(d) and the trial court erred in finding there was clear and convincing evidence that [S.M.] could not be placed with her mother."
 {¶ 10} "[I]t is well established that a parent's right to raise a child is an essential and basic civil right." In re Phillips, 11th Dist. No. 2005-A-0020, 2005-Ohio-3774, at ¶ 22, citing In re Hayes (1997),79 Ohio St.3d 46, 48. "The permanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case." Id., citing In re Hoffman, 97 Ohio St.3d 92,2002-Ohio-5368, at ¶ 14. "Based upon these principles, the Ohio Supreme Court has determined that a parent `must be afforded every procedural and substantive protection the law allows.'" Id. (citation omitted).
 {¶ 11} "`R.C. 2151.414 sets forth the guidelines that a juvenile court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates that the juvenile court must schedule a hearing and, provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care. *Page 5 
 {¶ 12} `Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency[.] * * *
 {¶ 13} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis that the juvenile court must apply when ruling on a motion for permanent custody. In practice, the juvenile court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 14} `If the child is not abandoned or orphaned [or has not been in the temporary custody of a public children services agency for twelve of twenty-two months], then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the juvenile court must consider all relevant evidence before making this determination. The juvenile court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the conditions are enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 15} `Assuming the juvenile court ascertains that one of the four circumstances listed in R.C. 2151.414(B)(1)(a) through (d) is present, then the court proceeds to an analysis of the child's best interest. * * *
 {¶ 16} The juvenile court may terminate the rights of a natural parent and grant permanent custody of the child to the moving party only if it determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency that filed the motion, and that one of the four circumstances *Page 6 
delineated in R.C. 2151.414(B)(1)(a) through (d) is present.'" In reT.B., 11th Dist. No. 2008-L-055, 2008-Ohio-4415, at ¶¶ 30-35 (citations omitted).
 {¶ 17} When reviewing the juvenile court's findings, this court applies the civil manifest-weight-of-the-evidence standard. In reJohnston, 11th Dist. No. 2008-A-0015, 2008-Ohio-3603, at ¶ 37 citingIn re Lay (1986), 25 Ohio St.3d 41, 42 (citation omitted). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Id. (citations omitted). "A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Id. (citations omitted).
 {¶ 18} S.M. first argues that in order to file for permanent custody under R.C. 2151.414(B)(1), the child must have been in the custody of the agency for at least twelve of the previous last twenty-two months, and S.M. was only in the custody of GCJFS for just over three months.
 {¶ 19} GCJFS filed the Motion for Permanent Custody under R.C. 2151.413 and R.C. 2151.414. The motion specifically states that "the child is not abandoned or orphaned and cannot be placed with either parent within a reasonable time or should not be placed with either parent". This echoes the language found in R.C. 2151.414(B)(1)(a), which contains an exception if the termination of parental rights if the child has not been in custody of a public children's service twelve out of twenty-two months. GCJFS was able to file for permanent custody even though S.M. was not in its custody for twelve months out of the last twenty-two months. Therefore, the first portion of S.M.'s argument is without merit. *Page 7 
 {¶ 20} S.M. next argues that there was not clear and convincing evidence that S.M. could not and/or should not be placed with Milliken. S.M. maintains that the evidence of GCJFS, specifically the testimony of Jaclyn Rychel, the court appointed special advocate, and Amanda Ward, a GCJFS social worker, was not clear and convincing evidence as both Rychel and Ward's interactions with S.M. were infrequent and no alarming behavior was noted. Furthermore, S.M. maintains that GCJFS failed to prove that Milliken did not comply with the case plan.
 {¶ 21} "Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." T.B., 11th Dist. No. 2008-L-055,2008-Ohio-4415, at ¶ 35 (citation omitted). "The standard of review for weight of the evidence issues, even where the burden of proof is `clear and convincing,' retains its focus upon the existence of some competent, credible evidence. In other words, when reviewing awards of permanent custody to public children services agencies, judgments supported by some competent, credible evidence must be affirmed. If the record shows some competent, credible evidence supporting the trial court's grant of permanent custody to the county, * * * we must affirm that court's decision, regardless of the weight we might have chosen to put on the evidence." In re Kangas, 11th Dist. No. 2006-A-0084, 2007-Ohio-1921, at ¶ 85 (citations omitted). "Every reasonable presumption must be made in favor of the judgment and the findings of fact of the juvenile court." Id. at ¶ 66 citing Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19.
 {¶ 22} "In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence." R.C. 2151.414(E). "If the court determines, by *Page 8 
clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent: (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * * (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child." R.C. 2151.414(E)(1) and (4).
 {¶ 23} "[T]he existence of a single factor will support a finding that a child cannot be placed with either parent within a reasonable time."Johnston, 11th Dist. No. 2008-A-0015, 2008-Ohio-3603, at ¶ 40, citingIn re J.C., 4th Dist. No. 07CA834, 2007-Ohio-3783, at ¶ 23; In reWilliam S., 75 Ohio St.3d 95, 99, 1996-Ohio-182 ("R.C. 2151.414(E) requires the trial court to find that the child cannot be placed with either of his or her parents within a reasonable time * * * once the court has determined * * * that one or more of the * * * factors exist"); In reJason S., 6th Dist. No. L-05-1264, 2006-Ohio-726, at ¶ 30 ("because one of the enumerated conditions existed, it was unnecessary for the juvenile court to address any of the other 15 conditions listed in R.C. 2151.414(E)").
 {¶ 24} In the present case, the juvenile court found two of the R.C. 2151.414(E) factors to exist, i.e. Milliken failed to substantially remedy the conditions causing the initial removal of S.M. and she demonstrated a lack of commitment toward S.M. Both *Page 9 
findings are supported by competent and credible evidence. Milliken's lack of commitment toward S.M. was demonstrated by her failure to visit and communicate regularly when able to do so. Milliken was also ambivalent at times about whether she was able to care for her daughter and whether she wished to reunify with her; at one time, Milliken expressed a desire to be removed from the case plan.
 {¶ 25} Further, Milliken did not remedy the conditions causing the removal of S.M. Specifically, she failed to cooperate with breath testing so that GCJFS could monitor the portion of the case plan that required her to remain sober. She also revoked a release that allowed the GCJFS to monitor compliance and progress in counseling. At times, Milliken refused to meet with the caseworker monitoring the case. There were also relationship issues with Ivans that were not significantly addressed. Milliken admitted that Ivans was verbally abuse towards herself and her daughter and had thrown stones at S.M.
 {¶ 26} Although Milliken complied with some aspects of the case plan, those aspects did not remedy the condition causing S.M.'s removal.In re Pihlblad, 5th Dist. Nos. 2008CA0019 and 2008CA0020,2008-Ohio-2776, at ¶ 32 ("where, despite marginal compliance with some aspects of the case plan, the exact problems which led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time") (citation omitted).
 {¶ 27} S.M. additionally argues that the termination of Milliken's parental rights were not in the best interest of the child under R.C. 2151.414(D). R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interests would be served by granting a children services agency permanent custody. The factors include: "(1) The interaction and interrelationship of the child with the child's *Page 10 
parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 [2151.41.3] of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency".
 {¶ 28} S.M. claims that GCJFS failed to prove with clear and convincing evidence that S.M.'s "wishes were that she no longer wished to live with her mother." Additionally, S.M. argues that GCJFS did not show, with clear and convincing evidence, that permanent placement could not be achieved without permanent custody through GCJFS.
 {¶ 29} The trial court, in a well-reasoned decision, supported its findings by clear and convincing evidence and arrived at the determination that it is in S.M.'s best interests to be permanently placed in the custody of GCJFS. Specifically, the trial court reviewed the lengthy history of this case. The court found that S.M. does have a bond with her mother; however, Milliken has difficulty dealing with S.M.'s behavioral issues that stem from her ADHD and her Anxiety Disorder with Depressive Mood. Millken has *Page 11 
also questioned her ability to effectively parent S.M. and, as mentioned above, Milliken rarely exercised her right to visit S.M. while the case was pending. The court also found that S.M. has a close relationship with her foster family, who has expressed a willingness to adopt if the motion is granted. The foster parents were able to appropriately manage S.M.'s behavioral problems. "When asked what [S.M.] like[d] about living with the foster family, she repeatedly stated that her foster mother is the one who cares about her the most."
 {¶ 30} The court also noted that S.M. has been inconsistent with her wishes to return to Milliken's custody. S.M. did however communicate to her attorney a desire to live with her mother. The court found that S.M. has a critical need for a legally secure placement; she has spent approximately three of the last four years in the temporary custody of an agency of a temporary caregiver, with her custody changing five times. Moreover, testimony demonstrated that further disruptions of her placement would only exacerbate her anxiety disorder.
 {¶ 31} R.C. 2151.414(D) requires a weighing of all the relevant factors, and the trial court did that in this case. The statute requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). "The statute does not even require the court to weigh that factor more heavily than other factors." In re Schaefer, 111 Ohio St. 3d 498, 2006-Ohio-5513, at ¶ 63. Since the trial court considered all of the relevant factors in determining that a termination of parental rights was in S.M.'s best interest, and there was competent, credible evidence in the record to support the trial court's findings. The trial court did not err in awarding permanent custody to the agency. *Page 12 
 {¶ 32} Lastly, S.M. asserts that GCJFS did not make reasonable efforts under the case plan at reunification pursuant to R.C. 2151.419(A)(1). "In determining whether the agency made reasonable efforts [pursuant to R.C. 2151.419(A)(1)] to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute."In re Elliott, 11th Dist. No. 2005-A-0018, 2006-Ohio-738, at ¶ 16, citing In re Lewis, 4th Dist. No. 03CA12, 2003-Ohio-5262, at ¶ 16
(citations omitted). "`Reasonable efforts' does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible." Id. citing Lewis, 2003-Ohio-5262, at ¶ 16.
 {¶ 33} GCJFS argues that reasonable efforts were made and the trial court's findings were not arbitrary. We agree. Milliken was provided with case supervision, counseling, psychiatric care, drug and alcohol assessments, drug testing, supervised visitation, and home studies. Based upon the foregoing, the trial court could reasonably conclude that GCJFS made sufficient reasonable efforts to prevent S.M.'s removal from Milliken's home pursuant to R.C. 2151.419.
 {¶ 34} For the foregoing reasons, the Judgment Entry of the Geauga County Court of Common Pleas, Juvenile Division, terminating parental rights and granting permanent custody of S.M. to the Geauga County Department of Job and Family Services, is affirmed. Costs to be taxed against appellant.
MARY JANE TRAPP, J., TIMOTHY P. CANNON, J., concur.
[1] Millken filed an amicus curiae brief with this court containing an assignment of error was identical to appellant's assignment of error. *Page 1