[Cite as *In re K.L.*, 2017-Ohio-434.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| IN RE: | : | Case No. 16CA9 |
| | : | |
| K.L. | : | <u>DECISION AND JUDGMENT</u> |
| K.L. | : | <u>ENTRY</u> |
| | : | |
| ADJUDICATED NEGLECTED | : | |
| CHILDREN. | : | **RELEASED: 02/02/17** |

_____

<u>APPEARANCES:</u>

Darren L. Meade, Parks and Meade, LLC, Columbus, Ohio, for Appellant D.L.[1]

John Custer, Middleport, Ohio, for Appellee.

_____

McFarland, J.

{¶1} This is an appeal filed by D.L., father of K.L. and K.L., from a Meigs County Common Pleas Court, Juvenile Division, judgment that awarded Appellee, Meigs County Job & Family Services (MCJ&FS), permanent custody of K.L and K.L. On appeal, Appellant contends that 1) the trial court's finding by clear and convincing evidence to permanently terminate his parental rights was against the manifest weight of the evidence; and 2) the trial court abused its discretion in denying the continuance requested by all parties but the State on the morning of trial. Because we

---

[1] Appellant's initials are K.D.L. To eliminate confusion we refer to him as "D.L." throughout the opinion.

find no abuse of discretion on the part of the trial court in denying the motion for continuance, we find no merit to Appellant's second assignment of error and it is overruled.  Further, because we find no error in the trial court's decision awarding MCJ&FS permanent custody, we find no merit to Appellant's first assignment of error and it is also overruled.  Accordingly, the judgment of the trial court is affirmed.

## FACTS

{¶2}  The children at issue, K.L and K.L., ages fifteen and eleven at the time of the permanent custody hearing, were removed from their home in connection with a complaint of dependency filed by MCJ&FS on June 13, 2014.  The complaint alleged that the current reason for emergency custody related to the children having head lice, poor hygiene, one of the children having burns on her back from trying to dye her hair with kool-aid and boiling water, and reports that the children's father, D.L., was abusing drugs. The complaint further detailed multiple prior incidences of agency involvement with the family.

{¶3}  Because the children's mother appeared to have abandoned them and the children's father, Appellant, was unable to comply with the case plan, MCJ&FS filed a motion for permanent custody of the children on January 27, 2015.  Subsequently a guardian ad litem was appointed for the

children and they were placed in the temporary custody of their uncle, also identified as K.L.

{¶4} A hearing on the permanent custody motion was held on April 12, 2016. The trial court interviewed the children in camera prior to the hearing. Further, just prior to the start of trial, Appellant's counsel moved the court for a continuance so that the children's brother, also identified as K.L., could have a home study performed and be considered as a placement for the children. Counsel for the children and the guardian ad litem joined in on the motion. The trial court took the motion under advisement and stated it would rule on it after hearing the evidence. MCJ&FS presented several witnesses in support of their motion for permanent custody, including case workers Shantel Barringer and Chelsey Imboden, and guardian ad litem Richard Hedges.

{¶5} Ms. Barringer testified regarding the circumstances which led to the most recent removal of the children from the home as well as the case plan requirements. She testified that although the children had been able to be placed with their uncle, K.L., they had to be removed from his home due to behavior issues. At the time of the hearing, the children were in two different foster homes. Ms. Barringer testified that Appellant failed to comply with the case plan in that he was not compliant with his alcohol and

drug treatment assessment and program, refused several drug screens and failed five out of fifteen drug screens. She further testified Appellant missed eight of thirty-two scheduled visitations with the children and arrived late at another ten of them. She also testified that he was currently in prison for drug trafficking. She testified that the agency would not consider the children's brother, K.L., as a placement alternative because they had not been provided with his work history or residence information.

{¶6} Ms. Imboden also testified. She testified that including the present complaint, there had been five complaints filed against the parents. The first complaint was in 2004, the second in 2009, the third in 2011, the fourth in 2012 and the present complaint in 2014. She further testified that overall, both children had been out of the care of their parents and in either agency or relative care for over seventy months of their lives. She testified that Appellant was sent to prison in October of 2015 for drug trafficking and that his release date was not until October of 2017. She testified that she had never had any contact with the children's mother despite attempts to do so and that although the children's brother, K.L., had inquired of her how to obtain custody of the children, he had never followed up with her. She further testified that although one of the children, K.L., repeatedly asks to stay with her father, Ms. Imboden recommended permanent custody to

MCJ&FS. She finally testified, with regard to possible placement with the children's brother, that she had no employment information for him, and had viewed pictures posted on Facebook indicating drug use, specifically marijuana, by him.

{¶7} Mr. Hedges also testified in his capacity as guardian ad litem for the children. He confirmed Appellant's current imprisonment and stated, as such, he clearly could not recommend the children be returned to him. He testified regarding the children's love for their father and their wishes and desire to live with their brother. He further requested that the court evaluate the brother as a possible placement, although he stated he was unaware how much income the brother had or the condition of his home. This witness concluded MCJ&FS's case.

{¶8} Appellant testified on his own behalf. He tried to explain some of the prior reports filed by MCJ&FS and stated that two of them, in particular, with criminal charges stemming from them were eventually dismissed. He stated that although he was presently incarcerated, he believed he would be eligible for judicial release in two months. He testified regarding the rehabilitative programming he was receiving while in prison, and stated he was also working on obtaining his GED. He asked that the court consider his son, K.L, as a placement for the children.

**{¶9}** Finally, the children's brother, K.L., testified.  He stated that he was nineteen years old and lives with his girlfriend and their child.  He testified that he earns between $350.00 and $500.00 a month, which in his view was enough to cover the addition of two more children.  He testified he pays his bills on time, has food in the house, has utilities and a separate room for the children.  He testified that he had tried to contact MCJ&FS three times but they never returned his call.  He explained that he did not go to their office because, in his view, they were not doing their job, so there was no reason to go to the office.  Upon being confronted with photos indicating that he used drugs, he admitted that he was smoking marijuana in the photo.

**{¶10}** After hearing the evidence, the trial court denied the motion for a continuance and subsequently issued its decision on April 28, 2016 granting MCJ&FS permanent custody of the children.  It is from this judgment entry that Appellant now brings his timely appeal, setting forth two assignments of error for our review.

ASSIGNMENTS OF ERROR

"I.    THE COURT'S FINDING BY CLEAR AND CONVINCING
       EVIDENCE GROUNDS TO PERMANENTLY TERMINATE
       APPELLANT'S PARENTAL RIGHTS WAS AGAINST THE
       MANIFEST WEIGHT OF THE EVIDENCE."

II.    THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING
       THE CONTINUANCE REQUESTED BY ALL PARTIES BUT THE
       STATE ON THE MORNING OF TRIAL."

## ASSIGNMENT OF ERROR II

{¶11} For ease of analysis, we address Appellant's second assignment of error first, out of order. In his second assignment of error, Appellant contends that the trial court abused its discretion in denying the continuance requested by all parties but Appellee on the morning of trial. A review of the record reveals that on the morning of trial, Appellant's counsel moved the trial court for a continuance of the trial in order that a home study could be performed on the residence of the children's brother, also identified as K.L., so that he could be considered by Appellee as a possible placement. Counsel for the children, as well as the guardian ad litem, joined in the motion.

{¶12} "An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981); citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841 (1964) and *State v. Bayless*, 48 Ohio St.2d 73, 101, 357 N.E.2d 1035 (1976). " '[A]buse of discretion' [means] an 'unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken.' " *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67; quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

"A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶13} " 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " *Unger* at 67; quoting *Ungar* at 589. "Weighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Id.* In evaluating a motion for a continuance, a court should consider (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstance which gives rise to the request for a

continuance; and (6) other relevant factors, depending on the unique facts of each case. *Id.* at 67-68.

{¶14} In this case, we find nothing unreasonable, arbitrary, or capricious about the trial court's decision to deny Appellant's motion to continue. When presented with the motion, and over the argument of Appellee that the sheer amount of time the case had been pending should preclude the granting of a continuance, the trial court agreed to take the motion under advisement, hear the evidence presented and then make a decision. After considering the evidence presented in support of the motion for permanent custody, which included testimony from the children's brother, K.L., as to his willingness and desire to care for the children, the trial court denied the motion for the continuance. In denying the motion, the trial court cited the history of the case, the amount of time that had passed, the fact that Appellee's motion for permanent custody was the only motion pending before the court, as well as the interests of justice.

{¶15} The record supports the trial court's determination. As argued by Appellee, the motion for permanent custody was filed on January 27, 2015, and thus had been pending for nearly fifteen months at the time the motion was made on the morning of the scheduled trial. K.L., the children's brother, had been involved with the process to the extent that he had

exercised visitation with the children while they were in foster care. Further, although the record indicates that K.L. did inquire with MCJ&FS at one point how to obtain custody of the children, he never followed up. As the trial court noted, K.L. had not filed a separate motion for custody of the children and at the time the motion for a continuance was made, K.L. was not a party to the case and the only motion actually pending before the court was Appellee's motion for permanent custody. Accordingly, based upon the foregoing reasons, we hereby overrule Appellant's second assignment of error and affirm the trial court's judgment.

## ASSIGNMENT OF ERROR I

{¶16} In his first assignment of error, Appellant contends that the trial court's finding, by clear and convincing evidence, that his parental rights should be permanently terminated was against the manifest weight of the evidence. In making this argument, Appellant does not seem to challenge the trial court's determination that the children could not be returned to their parents within a reasonable amount of time, or should not be returned to them, but rather he seems to primarily contend that his son, K.L., the children's nineteen year old brother, should have been considered as a placement that would have eliminated the need for a grant of permanent custody. Appellant bases his argument on some of the trial court's own best

interest findings, which include that the children's love for their father and brother, their desire to live with their brother and that their father's parental rights not be terminated, as well as the trial court's citation to a long history of the family's involvement with MCJ&FS and their need for a legally secure placement. In Appellant's view, the fact that numerous filings have been made and that the family has always managed to reunite should have weighed in favor of denying the motion for permanent custody. Appellant argues that the "mis-weighing of statutory factors and placing undue emphasis on [R.C.] 2151.414(D)(1)(d) was against the manifest weight of the evidence * * *."

## STANDARD OF REVIEW

{¶17} A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *In re B.E.*, 4th Dist. Highland No. 13CA26, 2014-Ohio-3178, ¶ 27; *In re R.S.*, 4th Dist. Highland No. 13CA22, 2013-Ohio-5569, ¶ 29.

> " 'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its

effect in inducing belief." ' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12; quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); quoting Black's Law Dictionary 1594 (6th Ed.1990).

{¶18} When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court " ' "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." ' ' *Eastley* at ¶ 20; quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001); quoting *Thompkins* at 387; quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *Accord In re Pittman*, 9th Dist. Summit No. 20894, 2002-Ohio-2208, ¶¶ 23-24.

{¶19} The question that we must resolve when reviewing a permanent custody decision under the manifest weight of the evidence standard is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43. "Clear and convincing evidence" is:

> "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being

more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases.  It does not mean clear and unequivocal." *In re Estate of Haynes,* 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

**{¶20}**  In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). *Accord In re Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985); citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof."). *Accord In re Adoption of Lay,* 25 Ohio St.3d 41, 42-43, 495 N.E.2d 9 (1986). Cf. *In re Adoption of Masa*, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986) (stating that whether a fact has been "proven by clear and convincing evidence in a particular case is a determination for the [trial] court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence").  Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the

evidence. *In re R.M.*, 4th Dist. Athens Nos. 12CA43 and 12CA44, 2013-Ohio-3588, ¶ 62; *In re R.L.*, 2nd Dist. Greene Nos. 2012CA32 and 2012CA33, 2012-Ohio-6049, ¶ 17; quoting *In re A.U.*, 2nd Dist. Montgomery No. 22287, 2008-Ohio-187, ¶ 9 ("A reviewing court will not overturn a court's grant of permanent custody to the state as being contrary to the manifest weight of the evidence 'if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements * * * have been established.' "). Once the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the fact-finder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *Thompkins* at 387; quoting *State v. Martin*, at 175. A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " *Id.*; *accord State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶21} And, when reviewing evidence under the manifest weight of the evidence standard, an appellate court generally must defer to the fact-

finder's credibility determinations. *Eastley* at ¶ 21.  As the *Eastley* court

explained:

> " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts.
>
> * * *
>
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " *Id*.; quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

Deferring to the trial court on matters of credibility is "crucial in a child

custody case, where there may be much evident in the parties' demeanor and

attitude that does not translate to the record well." *Davis v. Flickinger*, 77

Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). *Accord In re Christian*, 4th

Dist. Athens No. 04CA10, 2004-Ohio-3146, ¶ 7.  As the Ohio Supreme

Court long-ago explained:

> "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important.  The knowledge obtained through contact with and observation of the parties and through independent investigation cannot be conveyed to a reviewing court by printed record." *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952).

**{¶22}** Furthermore, unlike an ordinary civil proceeding in which a jury has no contact with the parties before a trial, in a permanent custody case a trial court judge may have significant contact with the parties before a permanent custody motion is even filed.  In such a situation, it is not unreasonable to presume that the trial court judge had far more opportunities to evaluate the credibility, demeanor, attitude, etc., of the parties than this Court ever could from a mere reading of the permanent custody hearing transcript.

## PERMANENT CUSTODY PRINCIPLES

**{¶23}** A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982); *In re Murray*, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990); *accord In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829.  A parent's rights, however, are not absolute. *D.A.* at ¶ 11. Rather, " 'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.' " *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979); quoting *In re R.J.C.*, 300 So.2d 54, 58

(Fla.App.1974). Thus, the state may terminate parental rights when a child's best interest demands such termination. *D.A.* at ¶ 11.

**{¶24}** Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. R.C. 2151.414(A)(1). Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:

> "(A) To provide for the care, protection, and mental and physical development of children * * *;
>
> * * *
>
> (B) To achieve the foregoing purpose[ ], whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety."

PERMANENT CUSTODY FRAMEWORK

**{¶25}** R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that:

"(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state."

Thus, before a trial court may award a children services agency permanent custody, it must find (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies, and (2) that awarding the children services agency permanent custody would further the child's best interests.

{¶26} The record indicates that the trial court's decision was based upon its R.C. 2151.414(B)(1)(a) finding that the children could not or should not be returned to a parent within a reasonable amount of time. As indicated above, during trial and now on appeal, Appellant does not seem to challenge this finding by the trial court, but rather seems to argue that the children's best interest required that the children's brother, K.L., should have been

considered as a placement for the children, rather than awarding permanent

custody to MCJ&FS.

### a. Reasonable Time

**{¶27}** R.C. 2151.414(E) governs a trial court's analysis of whether a

child cannot or should not be returned to a parent within a reasonable time.

The statute requires the trial court to consider "all relevant evidence" and

sets forth the factors a trial court must consider in determining whether a

child cannot or should not be placed with either parent within a reasonable

time. The pertinent subsections of the statute for this case are set forth

below. If the court finds the existence of any one of the following factors,

"the court shall enter a finding that the child cannot be placed with either

parent within a reasonable time or should not be placed with either parent":

> "(4) The parent has demonstrated a lack of commitment toward
> the child by failing to regularly support, visit, or communicate
> with the child when able to do so, or by other actions showing
> an unwillingness to provide an adequate permanent home for
> the child;
>
> * * *
>
> (10) The parent has abandoned the child.
>
> * * *
>
> (13) The parent is repeatedly incarcerated, and the repeated
> incarceration prevents the parent from providing care for the
> child."

{¶28} Here, the trial court found that the children cannot and should not be returned to their parents within a reasonable amount of time. The court found three R.C. 2151.414(E) factors present, specifically R.C. 2151.414(E)(7)(4), (10) and (13). The trial court specifically noted that (E)(10) was applicable to the children's mother, as she had abandoned them. The trial court then found factors (E)(4) and (13) were applicable to Appellant as he had been "in and out of jail or prison, and had chosen a life style that demonstrates a lack of commitment to providing structure for a home and family." Further, a review of the record indicates that Appellant was in prison at the time of the permanent custody hearing and is not scheduled to be released until the fall of 2017. Thus, in light of the foregoing we cannot conclude that the trial court's finding that the children cannot or should not be returned to their parents within a reasonable time is against the manifest weight of the evidence.

b. Reasonable Efforts

{¶29} Although not specifically set forth in this manner, we construe Appellant's argument that the trial court should have considered the children's brother, K.L., as a suitable placement for the children as an alternative to a grant of permanent custody, to be an argument that the trial court's reasonable efforts finding is against the manifest weight of the

evidence. R.C. 2151.419 governs a trial court's reasonable efforts findings

and provides in section (A)(1) as follows:

> "Except as provided in division (A)(2) of this section, at any
> hearing held pursuant to section 2151.28, division (E) of section
> 2151.31, or section 2151.314, 2151.33, or 2151.353 of the
> Revised Code at which the court removes a child from the
> child's home or continues the removal of a child from the
> child's home, the court shall determine whether the public
> children services agency or private child placing agency that
> filed the complaint in the case, removed the child from home,
> has custody of the child, or will be given custody of the child
> has made reasonable efforts to prevent the removal of the child
> from the child's home, to eliminate the continued removal of the
> child from the child's home, or to make it possible for the child
> to return safely home. * * * "

"By its terms, R.C. 2151.419 applies only at * * * adjudicatory, emergency,

detention, and temporary-disposition hearings, and dispositional hearings for

abused, neglected, or dependent children, all of which occur prior to a

decision transferring permanent custody to the state. The statute makes no

reference to a hearing on a motion for permanent custody. Therefore, '[b]y

its plain terms, the statute does not apply to motions for permanent custody

brought pursuant to R.C. 2151.413, or to hearings held on such motions

pursuant to R.C. 2151.414.' " *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-

1104, 862 N.E.2d 816, ¶ 41; quoting *In re A.C.*, 12th Dist. Clermont No.

CA2004–05–041, 2004-Ohio-5531, ¶ 30.

{¶30} Here, the trial court found that a reasonable efforts determination did not apply, since this was a hearing on a motion for permanent custody, but noted that MCJ&FS had already established that reasonable efforts at reunification had been made prior to the hearing. Further, to the extent Appellant argues that the trial court was required to consider placing the children with their brother, as a relative placement, before it could award MCJ&FS permanent custody, we disagree.

{¶31} We have previously recognized that a trial court need not consider relative placement before awarding a children services agency permanent custody. *In re C.T.L.A.*, 4th Dist. Hocking No. 13CA24, 2014-Ohio-1550, ¶ 52; *accord In re E.D.*, 2nd Dist. Montgomery No. 26261, 2014-Ohio-4600, ¶ 10; *In re J.H.*, 4th Dist. Hocking No. 14CA4, 2014-Ohio-3108, ¶ 27. A juvenile court need not determine by clear and convincing evidence that "termination of appellant's parental rights was not only a necessary option, but also the only option." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 64. Nor must "the juvenile court find by clear and convincing evidence that no suitable relative was available for placement." *Id.* R.C. 2151.414 "does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that

factor more heavily than other factors." *Id.*; *In re J.K.*, 4th Dist. Ross No. 11CA3269, 2012-Ohio-214, ¶ 27. Rather, a juvenile court is vested with discretion to determine what placement option is in the child's best interest. *In re A.C.H.*, 2011-Ohio-5595, at ¶ 44. The child's best interest is served by placing the child in a permanent situation that fosters growth, stability, and security. *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324, 574 N.E.2d 1055 (1991). Therefore, courts are not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. *Schaefer* at ¶ 64.

{¶32} Thus, the trial court was not required to find that MCJ&FS used reasonable efforts to place the children with a relative before awarding MCJ&FS permanent custody, provided it determined it was in the children's best interest for permanent custody to be granted to MCJ&FS. As such, we must review the trial court's best interest analysis, as set forth in its decision and judgment entry, to determine whether the trial court's best interest finding is against the manifest weight of the evidence.

{¶33} R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interest will be served by granting a children services agency permanent custody. The factors include: (1) the child's interaction and interrelationship with the child's parents, siblings,

relatives, foster parents and out-of-home providers, and any other person

who may significantly affect the child; (2) the child's wishes, as expressed

directly by the child or through the child's guardian ad litem, with due regard

for the child's maturity; (3) the child's custodial history; (4) the child's need

for a legally secure permanent placement and whether that type of placement

can be achieved without a grant of permanent custody to the agency; and (5)

whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.[2]

---

[2] R.C. 2151.414(E)(7) to (11) states:

"(7) The parent has been convicted of or pleaded guilty to one of the following:

(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;

(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;

(d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(e) An offense under section 2905.32, 2907.21, or 2907.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(f) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a), (d), or (e) of this section.

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(10) The parent has abandoned the child.

{¶34}  In this case, a review of the trial court's decision indicates that appropriate best interest findings were made by the trial court, which are supported by competent, credible evidence.  With respect to the child's interactions and interrelationships, the trial court found the children stated that they love their father, dislike their mother, and talked about their older brother, K.L.  The record further reflects that the children seem to believe that their brother is capable of taking care of them and that they desire to live with him.  The trial court further found that the children currently live in separate foster homes.

{¶35}  With respect to the children's wishes, the trial court found that both children clearly express a desire to get out of foster care and to live with their nineteen-year-old brother, his girlfriend and baby, and that they picture this arrangement to be what is left of their family.  The court also found they have positive feelings toward their father but dislike their mother.

{¶36}  Regarding the custodial history of the children, the trial court found that the children had experienced numerous living and "custodial" arrangements throughout their lives which involved living with individuals other than their parents.  The trial court noted that "this is not a '12 of 22'

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child."

fact pattern[,]" and that "each child has spent more than seventy months living with someone other than their parents." As set forth above, the record also indicates that the family's current involvement with MCJ&FS represented the fifth case with the family.

{¶37} Finally, with regard to the children's need for a legally secure placement, the trial court found that it was "unfortunately * * * necessary to terminate the parental rights of the parents to create a path for permanency and stability for the [children]." The court cited the mother's abandonment, as well as Appellant's "regular brushes with the law resulting in jail and prison" in justification of its finding. The court further found that despite the children's desire to live with their brother, that desire was not grounded in reality, and that such an arrangement was not "an option for the Court, particularly given that the only motion before the Court is that of the agency." Further, we already discussed the trial court's findings regarding the pertinent R.C. 2151.414(E) factors.

{¶38} Thus, it appears from our review of the trial court's decision that the necessary best interest factors were taken into consideration by the trial court and appear to weigh in favor of a grant of permanent custody to MCJ&FS. Although Appellant contends that the trial court "mis-weighed" the statutory factors and placed undue emphasis on [R.C.]

2151.414(D)(1)(d), we cannot conclude that this is one of the those exceptional cases in which the evidence weighs heavily against the trial court's decision or that the trial court clearly lost its way.

{¶39} We also note at this juncture that "[i]f permanent custody is in the child's best interest, legal custody or placement with [a parent or other relative] necessarily is not." *In the Matter of A.A. and N.A.*, 4th Dist. Athens No. 14CA38, 39-40, 2015-Ohio-1962, ¶ 64; quoting *In re K.M.*, 9th Dist. Medina No. 14CA0025–M, 2014-Ohio-4268, ¶ 9. Here, we have discussed the trial court's best interest findings and have found no error with respect to its determination that a grant of permanent custody to MCJ&FS was in the children's best interests. That same analysis applies here. Because the evidence supports the trial court's best interest finding, it also necessarily supports the court's decision not to consider the children's brother as a viable placement, especially considering that at the time of the permanent custody hearing, there was no competing motion for legal custody pending with the court. *In the Matter of A.A. and N.A.* at ¶ 64.

{¶40} In light of the foregoing, we find no error with respect to the trial court's decision to award permanent custody to MCJ&FS. Accordingly, Appellant's assignments of error are overruled and the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## __JUDGMENT ENTRY__

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Abele, J.: Concur in Judgment and Opinion.


For the Court,


BY:   _____
        Matthew W. McFarland, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**